**E. T. WHITE et al., Appellants,**

v.

**THOS. Y. PICKETT & COMPANY, Inc., et al., Appellees.**

No. 13892.

Court of Civil Appeals of Texas.

San Antonio.

March 7, 1962.

Rehearing Denied April 5, 1962.

Ward & Brown, Corpus Christi, Reese Wade, Beeville, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellants.

Small, Small & Craig, Austin, Fred C. Reeder, George Prowse, Corpus Christi, for appellees.

POPE, Justice.

E. T. White and more than one hundred other Aransas County taxpayers sought to enjoin the County from paying Thos. Y. Pickett & Company, Inc., the sum of $5,648.-79, under a contract Pickett had with the County for making surface evaluation of lands. They claimed that the contract was void, but the trial court denied their prayer for injunction. The taxpayers have appealed. They argue that (1) Aransas County lacked statutory authority to employ Pickett to appraise property subject to taxation, (2) the employment of Pickett amounted to a usurpation of the powers vested in the Tax Assessor, (3) the State Comptroller should have joined in the contract as required by Article 7264a, Vernon's Ann.Civ. St., (4) the amounts payable to Pickett under the contract were not budgeted for 1960 and 1961, and (5) the contract created a debt for future years without complying with the constitutional requirement for a tax levy to provide for the interest and sinking fund.

Aransas County and Pickett made a contract in July, 1959, by which Pickett agreed to make an analysis and survey of all property in Aransas County as of January 1, 1960, and also as of January 1, 1961.[1] The contract provided that Aransas County would pay Pickett upon the performance of its work, the sum of $5,387.50 on January 3, 1960, and a like sum on January 3, 1961. The County made the first payment, but the second payment was withheld when this suit for injunction was filed.

The first three points listed above were raised and rejected in Pritchard & Abbott v. McKenna, Tex., 350 S.W.2d 333, which was decided after this appeal was perfected. Actually the contract upon which Pickett relies is more carefully drawn than the one which was approved in the McKenna case. The contract in this case does not involve the Tax Assessor. Therefore, it more clearly satisfies the legal separation of duties of the Board of Equalization and the Tax Assessor than the contract in the McKenna case. The record also shows that the budgets for both 1960 and 1961 made provision for payment to Pickett.

The final point, however, is more serious. The contract between Aransas County and Pickett created a debt as distinguished from an expense payable out of current revenues. Section 7, Article 11 of the Texas Constitution, Vernon's Ann.St. states: "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a

1. "PARTY OF THE SECOND PART agrees and obligates itself to make such analysis and survey as of January 1, 1960 and to carry forward such survey as of January 1, 1961, which shall include all of the information which Second Party is able to procure pertaining to the character, quality and quantity, as well as the value of any real estate, improvements, personal properties, public utilities, commercial property and watercraft of every nature, so as to enable Party of the Second Part to prepare and file with the Board of Equalization, as hereinafter provided, a complete tabulation of appraised values pertaining to such properties as are duly rendered to or assessed by the Tax Assessor and Collector, for such Board's use in reviewing and equalizing the renditions and assessments against such properties submitted to it by the Tax Assessor and Collector for said Board's approval."

sinking fund; * * *." A debt has been defined as an obligation which becomes a burden on the future revenues of the county, one which is not to be paid during the current year and out of the current revenues. Texas & N. O. R. Co. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713, 715; Stevenson v. Blake, 131 Tex. 103, 113 S.W. 2d 525; Austin Bros. v. Patton, Tex.Com. App., 288 S.W. 182, 190; McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322. The contract in this case provided for two payments, one during 1960 and the other during 1961. This excludes the idea that the consideration was payable out of current revenues as distinguished from future funds. Stevenson v. Blake, supra; Andrus v. Crystal City, Tex.Com.App., 265 S.W. 550, 552; McNeill v. City of Waco, supra; City of Terrell v. Dissaint, 71 Tex. 770, 9 S.W. 593; Sumerlin v. Fowler, Tex.Civ. App., 229 S.W.2d 75; Rogers Nat. Bank v. Marion County, Tex.Civ.App., 181 S.W. 884.

■ Since the contract created a debt, it became necessary for the county to provide a fund for its payment. The County did that. Article 7212 designates the funds from which payments to appraisers may be made.[2] The contract provides that payment shall be made from the funds made available by Article 7212.[3] The total amount payable under the contract was specifically set aside out of those funds.[4] The Commissioners Court approved each of those steps, and as a part of the same order made a levy to produce the amount required to make the payments under the contract.[5]

These steps were a compliance with the Constitutional requirements. Mitchell County v. City Nat. Bank, 91 Tex. 361, 43 S.W. 880, 883–885; Hardeman County v. Foard County, 19 Tex.Civ.App. 212, 47 S. W. 30, 33.

The judgment is accordingly affirmed.

2. " * * * provided however, that if the Commissioners Court of any county who contracts with or employs any individual, firm, or corporation to compile taxation data, the compensation of such individual, firm, or corporation may be paid on a pro rata basis from each county fund receiving any taxes derived from such valuation."

3. "FOR AND IN CONSIDERATION of the experienced, skilled services of Second Party in performance of the obligations devolving upon them hereunder, First Party agrees and obligates itself to pay Second Party out of the Various Funds of Aransas County, Texas, as provided in Article 7212 R.S., a sum equal to Ten Thousand and Seven Hundred and Seventy Five ($10,775.00) Dollars, as full compensation for the services rendered Aransas County under the terms of this agreement. * * *
   "Payment in the form of warrants legally drawn against the Various Funds of said County shall be made on this contract as follows: Five Thousand and Three Hundred and Eighty Seven Dollars and Fifty Cents ($5,387.50) on the Third day of January 1960 and the balance of Five Thousand and Three Hundred and Eighty Seven Dollars and Fifty Cents

($5,387.50), shall be paid on January 3, 1961."

4. " * * * and to provide for the payment of said warrants, such an amount of money as is necessary for said purpose is hereby set aside and appropriated out of the moneys in, or which shall come into said Various Funds for the years 1960 and 1961. * * *

5. "3. For the purpose of paying the amount to become due Thos. Y. Pickett & Company, Incorporated, under this Contract during the year 1960, there is hereby levied for the year 1959 a tax against all taxable property in said County at a rate sufficient to produce such an amount, as provided in this contract, and the tax thus levied shall be collected along with the other County taxes levied and to be levied for said year.
   "4. For the purpose of paying the amount to become due Thos. Y. Pickett & Company, Incorporated, under this contract during the year 1961, there is hereby levied for the year 1960 a tax against all taxable property in said County at a rate sufficient to produce such an amount, as provided in this contract, and the tax thus levied shall be collected along with other County Taxes levied and to be levied for said year."