

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

June 12, 1964

Hon. George J. Jennings, Jr.    Opinion No. C-267
County Attorney
Swisher County            Re: Whether the Commission-
Tulia, Texas               ers' Court of Swisher
                             County has authority to
                             execute a contract call-
                             ing for services to be
                             rendered to the Board of
                             Equalization of Swisher
                             County in connection
                             with the evaluation of
                             real property within
                             Swisher County, and
Dear Mr. Jennings:          related questions.

        You have requested an opinion from this office
concerning the validity of a proposed contract whereby the
Board of Equalization of Swisher County would be given pro-
fessional assistance in the evaluation of real property in
connection with a revaluation program.

        Your letter states that it is now proposed that
the following steps be taken:

        "1. The county would give notice of its
           intention to authorize the execu-
           tion of a contract with . . . for
           the performance of services outlined
           in the contract, and of the county's
           intention to issue interest bearing
           time warrants in payment of all or a
           part of the contract price.  The
           notice would be published in the time
           and manner provided by Article 2368a,
           V.A.T.C.S., and contain the informa-
           tion therein required.

"2. At the time and place provided in the notice - if no referendum petition is presented - the Court would authorize the issuance of the time warrants. The warrants would remain in the custody of the County Clerk, County Treasurer and County Judge for delivery to the contractor upon estimated approval by the Commissioners' Court as the work progressed. At the time the warrants were to be authorized, provisions would be made for the payment thereof in accordance with the provisions of Article XI, Section 7, of the Constitution of Texas, as well as Article 2354 and Article 7212, V.A.T.C.S."

We understand your use of the phrase "upon estimated approval by the Commissioners' Court" in "2" above, to mean approval by the Commissioners' Court of an estimate of work completed.

In connection with the foregoing you have posed several questions, the first of which is:

"1. Does Swisher County have the authority to execute a contract to appraise and value real property within the county?"

Article 7206, Vernon's Civil Statutes, provides, in part, that:

"Each Commissioners' Court shall convene and sit as a board of equalization . . ."

Article 7212, Vernon's Civil Statutes, provides that:

"(A). The Boards of Equalization shall have the power and it is made their official duty to supervise the assessment of their respective counties and if satisfied that the valuation of such property is not in accordance with the laws of the State to increase or diminish the same and to affix the proper valuation thereto as provided for in the preceding Article and when any assessor in the State shall have furnished the said Board with a rendition as provided for in the preceding Article it shall be the duty of such court to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath the character, quality, quantity of such property as well as the value thereof. Said Court after hearing the evidence shall fix the value of such property in accordance with the evidence so introduced and as provided in the preceding Article and their action in such case or cases shall be final; provided, however, the Commissioners' Court of any county may employ an individual, firm or corporation deemed to have special skill and experience to compile taxation data for its use while sitting as a Board of Equalization and to provide for the payment of the compensation for such professional services out of the proper fund or funds of the county.

"(B) *To pay any contractual obligation
to be incurred for professional
services, under the provisions
hereof, the Commissioners' Courts
are hereby authorized to issue
time warrants payable from the
general fund of the county in the
manner provided by the Bond and
Warrant Law of 1931; provided,
however, the warrants so issued
shall mature within six (6) years
from their respective dates.*"
(Emphasis added)

Prior to the amendments made to Article 7212 by
the Legislature in 1963, Acts of 1963, 58th Leg., p. 1256,
Ch. 481, Sec. 1, it had been stated by this office in At-
torney General's Opinion No. C-63 (April 23, 1963) that:

"It has been definitely decided by
our courts, however, that the Com-
missioners' Court has the implied
power to employ independent assist-
ants to assist in arriving at the
value to be fixed by the Commission-
ers' Court as a Board of Equalization
where technical or special knowledge
is necessary and which knowledge the
Commissioners' Court would not be
presumed to possess . . ."

The above statement in Attorney General's Opinion No. C-63
had for its basis such cases as Roper v. Hall, 280 S.W.289
(Tex.Civ.App.1926); Simkins v. City of Corsicana, 86 S.W.2d
792 (Tex.Civ.App. 1935); Marquart v. Harris County, 117
S.W.2d 494(Tex.Civ.App. 1938, error dism.); Pritchard and
Abbott v. McKenna, 162 Tex.617, 282 S.W.2d 378 (1955).

In view of the foregoing authority and the ex-
press language contained in Article 7212 as amended by

the Legislature in 1963, we are of the opinion that Swisher County, acting through its Commissioners' Court may contract with and employ individuals, firms or corporations to compile taxation data to be used by the Commissioners' Court while sitting as a Board of Equalization.

Your second question, as set out in your letter, is:

"2. Assuming an affirmative answer to question number one, the following:

(a) May such a contract be entered without receipt of competitive bids?

(b) Does the proposed contract contravene the provisions of Article 7264(a), V.A.T.C.S., or Article 7335, V.A.T.C.S., or Article 7335a, V.A.T.C.S.?

(c) Does the proposed contract usurp the powers vested in the Tax Assessor?"

The provisions of Sec. 2 of Article 2368a, Vernon's Civil Statutes, are, in part, as follows:

"No county, acting through its commissioners' court . . . shall hereafter make any contract calling for or requiring the expenditure or payment of Two Thousand ($2,000.00) Dollars or more out of any fund or funds . . . without first submitting such proposed contract to competitive bids . . . and provided further, that <u>it shall not be applied to contracts for personal or professional services</u> . . ." (Emphasis added)

In Attorney General's Opinion No. R-2315 (1951), this office had before it the question of the validity of a contract for engineering services which was let by Commissioners' Court without competitive bids, and in such opinion it is stated that:

" . . . even before Article 2368 was super-

7264(a), 7335, or 7335a, Vernon's Civil Statutes. Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333 (1961).

Article 7212 (as amended by the Legislature in 1963, Acts of 1963, 58th Leg., p. 1256, ch. 481, Sec.1) is constitutional insofar as it provides for payment of such obligations by time warrants payable from the general fund of the county.

The Commissioners' Court of Swisher County can enter into a contract for appraisal services which contains provisions for payment similar to those approved by the court in the case of White v. Thomas Y. Pickett & Company, 355 S.W.2d 848 (Tex. Civ.App., 1962), error ref. n.r.e.) if the wording is changed to properly reflect that payment is to be made from the general fund of the county.

Where payment of a contractual obligation is to be made from current funds it is sufficient that the proper constitutional fund of the county contain sufficient money on hand or within reasonable anticipation of being on hand during the year in which the contract is made.

Very truly yours,

Furthermore, the services to be performed under the provisions of Article 7212 are specifically referred to in the statute itself as requiring "special skill and experience" and as "professional services under the provisions hereof." Therefore, in answer to your question, the services to be performed in the instant situation would be the type of services exempted from the competitive bid provisions of Article 2368a.

Articles 7264a, 7335, and 7335a, Vernon's Civil Statutes, all pertain to various aspects of the collection of delinquent taxes. As the contract in the situation you have here posed deals merely with services to be rendered to the Commissioners' Court sitting as a Board of Equalization in the evaluation of property for tax purposes, we are of the opinion that the proposed contract between the Commissioners' Court of Swisher County and the party to render these services to the Commissioners' Court would not conflict with or contravene the provisions of Articles 7264a, 7335, or 7335a. This question was before the Supreme Court of Texas in the case of Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333 (1961), and the court held that a contract of the type here considered was not the type of contract or activity subject to the provisions of Articles 7264a, 7335, and 7335a.

In this same connection the case of Pritchard & Abbott v. McKenna, supra, also decided the question of whether a contract of the nature we have before us usurps the powers, duties and responsibilities of the Tax Assessor and Collector. The court in its opinion stated that:

> " . . . We quite agree that the County Commissioners' Court is not charged with the management and control of all the County's business affairs. Each of the various elected officials, including the Assessor-Collector, has the sphere that is delegated to him by law and within which the Commissioners' Court may not interfere or usurp. But that is not to say that the functions of the Board of

> Equalization and those of the Assessor-
> Collector are so diverse that information
> may not be lawfully contracted for and
> obtained by the Equalization Board be-
> cause it may likewise be of aid to the
> Assessor in the performance of his
> duties . . ." (Emphasis added)

Your third question reads as follows:

> "3. Are the provisions of paragraph VI
> of the contract a legally and suf-
> ficient provision for payment, if at
> the time of execution of the con-
> tract provision has been made for
> the issuance of the interest bear-
> ing time warrants?"

Section VI of the proposed contract provides for
payment to the party performing the evaluation services
for the Commissioners' Court sitting as a Board of Equa-
lization by the issuance and delivery of interest bearing
time warrants which have been authorized by an order of
the Commissioners' Court. Such time warrants are to be
dated February 1, 1964, are to bear interest at the rate
of 5% per annum and are scheduled to mature in five equal
installments – the first maturing on December 1, 1964,
and thereafter on the same date of each succeeding year
through 1968. The order authorizing the time warrants and
the levying of the tax for payment of the principal and
interest is incorporated by reference and made a part of
the contract.

Section B of Article 7212, Vernon's Civil Statutes,
which is set out in its entirety elsewhere in this opinion,
provides specifically that time warrants may be issued by
a Commissioners' Court for this purpose in the manner pro-
vided for in the Bond and Warrant Law of 1931, but with the
additional limitation that warrants so issued shall mature
within six years from their respective dates.

Since nothing in Section VI of the proposed contract conflicts with the provisions of the Bond and Warrant Law of 1931 or with the provisions of Article 7212, and presuming that the Bond and Warrant Law of 1931, i.e., Article 2368a, Vernon's Civil Statutes, is fully complied with in authorizing the warrants and levying the tax for payment thereof, your question number three is answered in the affirmative.

In your next question you inquire as follows:

"4. Is Article 7212 (as amended by Chapter 481, Acts of the 58th Legislature, Regular Session, 1963) constitutional insofar as it provides that warrants are to be payable from the general fund of the county?"

Section 9 of Article VIII of the Constitution of Texas reads, in part, as follows:

" . . . at the time the Commissioners' Court meets to levy the annual tax rate for each county it shall levy whatever tax rate may be needed <u>for the four (4) constitutional purposes; namely, general fund, permanent improvement fund, road and bridge fund and jury fund.</u>" (Emphasis added)

It is clear that the county can levy a tax in this instance only for the benefit of one of the above enumerated constitutional funds. The contractual obligation for which these warrants are to be issued would seem clearly to constitute an operating expense of the county and therefore properly chargeable to the general fund. Certainly it can not be said that these warrants are to be issued to pay for permanent improvements or roads and bridges or in payment of juries.

Article 7212 was amended by the Legislature in 1949, Acts of 1949, 51st Legislature, p. 1196, ch. 607, Sec. 1, to

provide payment for such services ". . . on a pro rata basis from each county fund receiving any taxes derived from such valuation". Prior to that time there was no valid statutory provision regarding payment of such obligations, but various Attorney General's Opinions upheld the legality of contracts which provided that such obligations were payable from the general fund. Enclosed is a copy of Attorney General's Opinion No. 0-4114 (November 7, 1941) which deals directly with this specific question. The 1963 amendment to Article 7212 repealed the 1949 amendment and gave statutory recognition to the rule that had been consistently followed by this office until the 1949 amendment.

In the opinion of this office the specific provision in Article 7212 to the effect that these warrants are to be paid from the general fund of the county simply amounts to an enunciation of what would be properly construed as a constitutional requirement and therefore is not itself violative of the Constitution.

Your letter further sets out, as a fifth question, the following:

> "5. May such a contract be entered into
>     without giving notice of County's
>     intention to do so where general
>     fund warrants are to be used to pay
>     for services?"

Article 7212 specifically authorizes the county to enter into such a contract but is entirely silent as to any requirement of notice of intention to enter into same, although it does provide that time warrants authorized thereunder shall be issued "in the manner provided by the Bond and Warrant Law of 1931".

We must, therefore, look to the provisions of Article 2368a for any requirement as to notice of intention to contract. Section 2 of said Act, the pertinent portion of which is quoted herein at page 5, gives the provisions

as to notice under the Act. The only other provision pertinent to the question of notice is Section 3, which provides:

> "Sec. 3. When it shall be the intention of the Commissioners' Court . . . to issue time warrants for the payment of all or any part of the proposed contract, <u>the notice to bidders required under Section 2 of this Act</u> shall recite that fact, setting out the maximum amount of the proposed time warrant indebtedness, the rate of interest such time warrants are to bear, and the maximum maturity date thereof". (Emphasis added)

Since Section 3, by its own terms, applies only where notice is required under Section 2, and since we have already held in answering your question 2(a) above, that no notice to bidders is required in the instant case because Section 2 specifically exempts contracts for "personal or professional service" from its terms, we answer your question number five in the affirmative, i.e., the proposed contract <u>can</u> be entered into without giving notice of intention to do so when time warrants are to be used to pay for the services contracted for.

Your sixth question is:

> "6. Should the Commissioners' Court of Swisher County desire to do so may they enter into a contract such as enclosure contract #2 which calls for the performance of appraisal services over a two year period and payment out of General Fund monies at the end of each of the designated two years, provided the percentage of work is completed by appraiser as prescribed in contract?"

This question, as well as question seven, concerns an entirely different contract than that considered in the first five questions and relates to the manner in which

provision has been made for payment of the amount to become due the appraiser for work performed thereunder. Our review of proposed contract number two has been limited to this aspect only.

It should be observed at the outset that the contract referred to does not make reference to payment out of the "General Fund", as your question itself does, but rather to "the proper fund or funds of Swisher County" and to "said proper county fund or funds". Article 7212 provides specifically that payments for such services are to be made from the general fund and we have affirmed in this opinion in answer to your question four that this is the constitutional fund properly to be charged with such expenditure. Therefore, the wording of enclosure contract number two should be changed accordingly.

In all other relevant respects enclosure contract number two is essentially identical in form to a contract entered into between the Commissioners' Court of Aransas County and Thomas Y. Pickett & Company, Inc., which involved similar services to the county and similar provisions as to payment for such services, and which was upheld by the courts in the case of White v. Thomas Y. Pickett and Company, 355 S.W.2d 848 (Tex.Civ.App.,1962, error ref. n.r.e.).

Therefore, our answer to your sixth question is that the Commissioners' Court of Swisher County can enter into a contract containing provisions for payment for appraisal services performed thereunder such as is found in your enclosure contract number two, provided that the wording is changed so as to correctly reflect that payments thereunder shall be made from the general fund of the county.

We interpret your seventh and final question to mean the following: where an obligation incurred under a contract is to be paid out of current funds, must the County Treasury actually contain, at the time the contract is signed, sufficient funds to satisfy the obligation or is it necessary only that money in the Treasury, taxes in the process of collection during such tax year, and all other revenues which may

be anticipated with reasonable certainty during such tax year be sufficient to pay the obligation?

It has been held that no debt is created within the meaning of Section 7 of Article 11 of the Constitution of Texas if a valid appropriation is made for the payment of the total amount due from funds on hand <u>or funds within reasonable anticipation of being on hand</u> during the current year in which the contract is made. <u>McNeill v. City of Waco</u>, 89 Tex. 83, 33 S.W.322 (1895); <u>City of Ft. Worth v. Bobbitt</u>, 121 Tex.14, 41 S.W.2d 228 (1931).

Thus, in answer to the question posed above it would not be necessary that at the time the contract is signed the County Treasury actually contain the money to pay the obligation but only that the proper constitutional fund contains sufficient money on hand or within reasonable anticipation of being on hand during the year in which the contract is made.

### SUMMARY

Swisher County, acting through its Commissioners' Court, may contract with and employ individuals, firms or corporations to compile taxation data to be used by the Commissioners' Court while sitting as a Board of Equalization, under the provisions of Article 7212, Vernon's Civil Statutes.

Such a contract may be entered into without receipt of competitive bids or giving notice of intention to contract even when general fund time warrants issued under the provisions of the Bond and Warrant Law of 1931, are to be used to pay for the services to be rendered.

The Commissioners' Court can enter into such a contract without usurping the powers vested in the Tax Assessor and without contravening the provisions of Articles

7264(a), 7335, or 7335a, Vernon's Civil Statutes. Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333 (1961).

Article 7212 (as amended by the Legislature in 1963, Acts of 1963, 58th Leg., p. 1256, ch. 481, Sec.1) is constitutional insofar as it provides for payment of such obligations by time warrants payable from the general fund of the county.

The Commissioners' Court of Swisher County can enter into a contract for appraisal services which contains provisions for payment similar to those approved by the court in the case of White v. Thomas Y. Pickett & Company, 355 S.W.2d 848 (Tex. Civ.App., 1962), error ref. n.r.e.) if the wording is changed to properly reflect that payment is to be made from the general fund of the county.

Where payment of a contractual obligation is to be made from current funds it is sufficient that the proper constitutional fund of the county contain sufficient money on hand or within reasonable anticipation of being on hand during the year in which the contract is made.

Very truly yours,

WAGGONER CARR
Attorney General

By James M. Strock
James M. Strock
Assistant

JMS-s
Enclosure

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman

Howard W. Mays
J. C. Davis
Robert Smith
Howard Fender

APPROVED FOR THE ATTORNEY GENERAL

By: Stanton Stone